**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANGEL PIZARRO,**

      **Petitioner,**

**v.**                           **CASE NO. 6:08-cv-2045-Orl-35DAB**

**SECRETARY, DEPARTMENT OF**
**CORRECTIONS, et al.,**

      **Respondents.**

_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.   Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 16).  Petitioner was provided with the opportunity to file a reply to the response, but he failed to do so.

Petitioner alleges six claims for relief in his habeas petition:  1) his conviction was obtained as a result of the false testimony of two of the State's witnesses; 2) trial counsel was ineffective for failing to object to testimonial hearsay evidence; 3) trial counsel was ineffective for failing to request a fingerprint comparison; 4) trial counsel was ineffective for failing to move for a new trial; 5) trial counsel was ineffective for failing to file a motion in limine; and 6) trial counsel was ineffective for failing to investigate certain hotel receipts.

## I.    Procedural History

Petitioner and two other individuals[1] were charged by information with trafficking in 400 grams or more of cocaine (count one), trafficking in 4 grams or more of heroin (count two), and possession of cannabis with intent to sell or deliver (count three).  A jury trial was held, and Petitioner was found guilty as to count one and not guilty as to counts two and three.  The trial court adjudicated Petitioner guilty of trafficking in 400 grams or more of cocaine and sentenced him to imprisonment for a term of fifteen years.  Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied.  Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II.   Legal Standards

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court

---

[1]The other two individuals were Felix Cruz and Nelson B. Diaz.

2

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

---

[2]Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

### B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[3]   *Id*. at 687-88.   A court

must adhere to a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.   *Id*. at 689-90.   "Thus, a court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on

the facts of the particular case, viewed as of the time of counsel's conduct."   *Id*. at 690;

*Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test
> even what most good lawyers would have done. We ask only whether some
> reasonable lawyer at the trial could have acted, in the circumstances, as
> defense counsel acted at trial. Courts also should at the start presume
> effectiveness and should always avoid second guessing with the benefit of
> hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under

those rules and presumptions, "the cases in which habeas petitioners can properly prevail

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

on the ground of ineffective assistance of counsel are few and far between." *Rogers v.*

*Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

**C.     Exhaustion and Procedural Default**

One procedural requirement set forth in the AEDPA precludes federal courts, absent

exceptional circumstances, from granting habeas relief unless the petitioner has exhausted

all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*,

526 U.S. 838, 842-22 (1999).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it
> appears that–
>
> > (A)     the applicant has exhausted the remedies available in the
> > courts of the State; or
> >
> > (B)     (i)     there is an absence of available State corrective
> > process; or
> >
> > (ii)    circumstances exist that render such process ineffective
> > to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been

denied on adequate and independent procedural grounds under state law.  *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991).  In addition, a federal habeas court is precluded

from considering claims that are not exhausted but would clearly be barred if returned to

state court.  *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and

the court to which the petitioner would be required to present his claims in order to meet

the exhaustion requirement would now find the claims procedurally barred, there is a

procedural default for federal habeas purposes regardless of the decision of the last state

5

court to which the petitioner actually presented his claims).

A procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## III.   Analysis

## A.   Claim One

Petitioner argues that his conviction was obtained as a result of the false testimony of two of the State's witnesses.  This claim was raised in Petitioner's Rule 3.850 motion, and the trial court found that it was procedurally barred because it should have been raised on direct appeal.

6

Petitioner's claim is procedurally barred because the trial court so determined in its order denying Petitioner's motion for postconviction relief and the state appellate court affirmed *per curiam*.[4] The denial on procedural bar grounds was a correct application of Florida law.  Petitioner has not shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception.  The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, this claim is denied because it is procedurally barred.

**B.    *Claim Two***

Petitioner contends that trial counsel was ineffective for failing to object to testimonial hearsay evidence.  He states that, when the State questioned Felix Cruz, a cooperating witness and co-defendant, with regard to the sequence of events leading to the arrest, the State elicited a series of declarations made by an out-of-court declarant, Johann Rogers.  This claim was raised in Petitioner's Rule 3.850 motion, and it was denied because counsel had no basis to object to the testimony.

At trial, Mr. Cruz testified on direct examination as follows:

Q      Okay.  Let's talk about how you got involved on this back on November 6, 2003.  How did you first get involved with doing this heroin transaction on November 6, 2003?

A      I was getting off of my work.  I was working in the parks at a nursing home.  I receive[d] a phone call from Johann Rogers, and he told me that he got two friends, so if I can do a favor for him.  I was going on my way

---

[4]A *per curiam* affirmance of a trial court's finding of a procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts.  *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).

to my house.

. . . .

Q      Did you used to know him as Flacko?

A      That's the same.  Flacko is [the] nickname [of] Johann Rogers.

Q      Got the call from Flacko or Johann asking you to do something?

A      Yes.  He told me if I can do a favor for him.  He don't want to tell me by the phone.  He tell me if I can pass by his house.

Q      Okay.  So you didn't want to talk about what he wanted you to do on the phone so he asked to you come by the house?

A      Exactly.

Q      Did you drive by the house?

A      That's why I went to his house.

Q      What happened when you got to Flacko's house?

A      He told me he got friends waiting for him, so can I can [sic] drop something for him.

Q      What were they waiting for?

A      Cocaine.

Q      Okay.  Is that what Flacko told you?

A      Yes, he told me.

. . . .

Q      So you took this container with what had cocaine in it, and you took it from Flacko over to the Holiday Inn?

A      Exactly, that's correct.

Q      When you got to the Holiday Inn, you met with who?

8

A        I was over there, waiting, and Angel Pizarro, and Nelson Diaz showed up over there.

. . . .

Q        You gave [Angel Pizarro] the container that contained the cocaine?

A        That's correct.

Q        And you gave that to who, Nelson or to–

A        To. Angel Pizarro.

(Appendix B, Transcript of Trial at 88-93.)   Petitioner argues that the declarations of Johann Rogers were hearsay and that counsel should have raised an objection.

Under Florida law, "[a] statement by a person who was a coconspirator of the party during the course, and in furtherance of the conspiracy" is a hearsay exception and is admissible as evidence.   *See* § 90.803(18)(e), Fla. Stat.   In the present case, the statements of Mr. Rogers were made during the course of, and in furtherance of, the conspiracy to sell cocaine.[5]   Mr. Rogers directed Mr. Cruz to deliver cocaine to his friends, and Mr. Cruz eventually delivered the cocaine to Petitioner.   Under the circumstances, there statements were admissible as hearsay exceptions.

Consequently, Petitioner has not demonstrated that counsel acted unreasonably or that he sustained prejudice.  As a result, Petitioner has not shown that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in

---

[5]It is not necessary for a conspiracy to be charged before hearsay statements are admissible under the co-conspirator exception.  *Christie v. State,* 652 So. 2d 932, 933 (Fla. 4th DCA 1995).

light of the evidence," 28 U.S.C. § 2254(d), and Petitioner is not entitled to federal habeas relief on this claim.

**C.    Claim Three**

Petitioner states that trial counsel was ineffective for failing to request a fingerprint comparison.  Petitioner argues that the seized cocaine was situated in a "pharmaceutical-like plastic container" found inside Cruz' vehicle, that he lacked knowledge of the contents of the container, and that he never touched the container.  This claim was raised in Petitioner's Rule 3.850 motion, and it was denied because there had been no showing of prejudice.

The Court finds that there has been no showing that counsel acted deficiently or that Petitioner sustained prejudice as a result of this matter.  First, the testimony at trial established that Petitioner was seen holding the container, testing the cocaine, and handing the container to another person.  (Appendix B, Transcript of Trial at 34, 60-62, 93-96, 148-50).  Thus, irrespective of whether his fingerprints were found on the container, the State presented substantial evidence that Petitioner touched and had possession of the container.

Next, because the State failed to make a comparison between the fingerprints found on the container and Petitioner's fingerprints, Petitioner's counsel was able to argue that the State failed to prove that Petitioner ever touched the container.[6]  Hence, Petitioner's counsel was able to take advantage of the State's failure to make a comparison of the fingerprints.

---

[6]Petitioner's counsel specifically stated during closing argument that "fingerprint evidence, you don't have that now . . . ."  *Id*. at 261.

10

Finally, the absence of Petitioner's fingerprints on the container does not establish that Petitioner did not actually touch the container.  The lack of fingerprints could have resulted from Petitioner failing to leave prints of a sufficient quality to be identified or from failing to leave any prints.

As such, the Court finds that Petitioner has failed to establish that counsel acted deficiently or that Petitioner sustained prejudice.  Consequently, Petitioner has failed to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.  *See* 28 U.S.C. § 2254 (d)(1), (2).

**D.    Claim Four**

Petitioner states that trial counsel was ineffective for failing to move for a new trial on the basis that cooperating witnesses, Nelson Diaz and Feliz Cruz, both failed to disclose the true terms of their substantial assistance agreements.  This claim was raised in Petitioner's Rule 3.850 motion, and it was denied because there was no legal basis to file a motion for a new trial and because there had been no showing of prejudice.

At trial, Mr. Cruz testified on cross-examination that he entered into a substantial assistance agreement with the State; that he agreed to testify "against  whoever elected a trial;" that, under the agreement, he received a sentence of "15 years minimum mandatory;" and that he agreed to testify "truthfully against all accomplices."  (Appendix B, Transcript of Trial at 99-101.)

Mr. Nelson testified on direct examination that he entered into an agreement with the State and that he agreed to help law enforcement "get other people to reduce my time." *Id*. at 112.  Mr. Nelson also testified that, as part of the agreement, the State dropped

11

certain charges against him and that he agreed to testify truthfully against all accomplices. *Id*. at 129.

In the present case, Petitioner's counsel questioned these witnesses regarding their cooperation agreements with the State and the potential effect of such agreements on their sentences. Petitioner presents nothing to support his assertion that these witnesses did not reveal the true nature of their agreements, that his counsel failed to examine these witnesses regarding their agreements, or that there was any basis to support a motion for a new trial. There is nothing in the record suggesting that his counsel's performance fell below an objective standard of reasonableness.

Moreover, because there was overwhelming evidence in this case, there has been no showing of prejudice. Consequently, Petitioner has not shown that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).

## E.    *Claim Five*

Petitioner alleges that trial counsel was ineffective for failing to file a motion in limine regarding Petitioner's arrest for possession of cocaine in 1996. This claim was raised in Petitioner's Rule 3.850 motion, and it was denied because there had been no showing of prejudice.

Assuming that such evidence would ordinarily be inadmissible, there would have been no need for counsel to file a motion in limine, particularly since there was no indication that, prior to trial, the State had notified the trial court of its intention to seek admission of this evidence. Thus, counsel did not act unreasonably in failing to file a

12

motion in limine.

Moreover, Petitioner testified at trial that his drug habit "was just beginning, just developing." (Appendix B, Transcript of Trial at 216.) Based on that testimony, the State sought to introduce evidence of his 1996 arrest for possession of cannabis and cocaine. *Id*. at 239. Petitioner's counsel immediately objected to the admission of this evidence, and the trial court allowed the State to ask Petitioner about the arrest. *Id*. at 241.

The prior arrest became admissible as rebuttal to Petitioner's testimony that his drug habit was "just beginning." *See Davis v. State*, 216 So.2d 87 (Fla. 2d DCA 1968) (trial court did not err in allowing the state to cross-examine the defendant about charges of exhibiting a dangerous weapon when, on direct examination, the defendant had repeatedly asserted that he never possessed firearms of any nature since moving to Sarasota). Consequently, since the prior arrest was admissible because of Petitioner's testimony, Petitioner has failed to demonstrate deficient performance by counsel or that he sustained prejudice. Accordingly, the state court's denial of this ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law" or based on an unreasonable determination of the facts in light of the evidence.

## F.   *Claim Six*

Petitioner argues that trial counsel was ineffective for failing to investigate certain hotel receipts that had been listed by the State in discovery as "miscellaneous papers" recovered from the trunk of Mr. Diaz' vehicle. He states that Agent Michael Drake testified that several receipts recovered from Mr. Diaz' vehicle "bore the Petitioner's name for a Holiday Inn hotel room"; however, according to Petitioner, his name was "not on any

13

Holiday Inn receipt," and counsel's failure to investigate these receipts prevented the impeachment of Agent Drake.  This claim was raised in Petitioner's Rule 3.850 motion, and it was denied because there had been no showing of prejudice.

Agent Drake testified that he found "some miscellaneous hotel receipts" in the trunk of Mr. Diaz' vehicle and that he believed Petitioner's name was on a hotel receipt. (Appendix B, Transcript of Trial at 164.)  However, contrary to Petitioner's assertion, Agent Drake did not specifically identify any receipt as coming from the Holiday Inn or from any other particular hotel.  Further, Petitioner admitted in his own testimony that he had gone to a hotel with Mr. Diaz and stated that "I had taken all my possessions out of the hotel [where] I was staying, [and] some of those possessions were in the trunk, still in the trunk" of Mr. Diaz' car.  *Id*. at 218, 227.

Since Agent Drake did not refer to a Holiday Inn receipt and since Petitioner admitted that he had gone to a hotel with Mr. Diaz and that he placed certain items in Mr. Diaz' vehicle, there has been no showing of prejudice.  Accordingly, the state court's denial of this ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law" or based on an unreasonable determination of the facts in light of the evidence.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Angel Pizarro is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

14

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of January 2011.


MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


Copies to:
sa 1/20
Counsel of Record
Angel Pizarro